IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHAQUAN CARTER,                    )
Y15666,                            )
                                   )
          Plaintiff,               )
                                   )
vs.                                )
                                   )   Case No. 26-cv-40-DWD
JUSTIN KULICH,                     )
JOHN DOE,                          )
HEATHER YOUNG,                     )
                                   )
          Defendants.              )

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Shaquan Carter, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 15). Specifically, Plaintiff alleges retaliation, unlawful conditions of confinement, and deprivation of a grievance form. The Court dismissed his original complaint for failure to state a claim (Doc. 12) and his amended complaint (Doc. 15) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. §

1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009)*.

### THE AMENDED COMPLAINT

Plaintiff alleges that on June 23, 2025, he complained while in line at the property building that he lacked a fan during high summer temperatures.  (Doc. 15 at 7).  Defendant Kulich was present and told Plaintiff if he wanted a fan he should not have come to jail.  Plaintiff retorted that he still had rights and would file a grievance.  In response, Kulich indicated that if Plaintiff kept up the attitude, Kulich would make Plaintiff's incarceration harder.  (*Id.* at 7).  Plaintiff grieved the incident.

On June 30, 2025, Plaintiff was placed on crisis watch in the North 2 cellhouse.  He alleges that John Doe placement officer placed him in a cell that had blood and feces on the wall and bedding and lacked running water.  (Doc. 15 at 7-8).  He alleges that the cell often had sewage on the floor, and that his feet were directly exposed because crisis watch inmates could not have shoes or socks.  He claims he got extreme peeling and an infection on his feet.  He was on crisis watch status through July 3, 2025, but he was not moved to another cell until July 10, 2025.  He claims that he had no working water and only had one juice per day to try to stay hydrated.  He was not allowed to shower while on crisis watch.

On July 10, 2025, John Doe placement officer moved Plaintiff from the crisis watch cell to another cell in North 2 that lacked electricity.  He complains that without a fan he suffered heat exhaustion and "mild asthma" constantly.  Plaintiff remained in this cell for

two weeks.  He faults John Doe for violating his rights under the Eighth Amendment by placing him in these filthy and run down cells.  (Doc. 15 at 11).

Plaintiff complains that on July 17, 2025, he asked Defendant Young (a counselor) for a grievance form during her rounds.  After rounds, he received a written note from Young refusing a grievance because Plaintiff had just received a grievance and seg pen three days earlier.  Plaintiff alleges the denial was wrongful because new incidents arose during the 72 hours between when he got a grievance form and when he requested another from Young.  He accuses Young of violating his right to due process.

On December 30, 2025, Plaintiff had another encounter with Defendant Kulich wherein Kulich said, "if you keep writing me up, you won't make it home."  (Doc. 15 at 9).  Plaintiff indicates that he immediately filed this lawsuit to exhaust his administrative remedies, rather than trying to file a grievance about this encounter.  Plaintiff alleges that he "believes acts from Kulich after 6/23/25 is retaliation for their first encounter on June 23, 2025."  (Doc. 15 at 9).  He further specifies that he thinks Kulich spoke to him on December 30, 2025, in the harassing manner because Kulich had just responded to the grievance filed back in June of 2025.  (*Id.*).  Plaintiff faults Kulich for retaliation.  (Doc. 15 at 10).

Plaintiff seeks monetary compensation (Doc. 15 at 14), and a preliminary injunction transferring him to another prison because he fears further retaliation.  In the freestanding Motion for a Preliminary Injunction (Doc. 16), Plaintiff indicates that he fears for his safety because he is still housed around Defendants in this case and other inmates

at Menard have suffered retaliation linked to grievances and lawsuits. (*Id.*). He seeks a transfer to another prison to stave off further retaliation. (*Id.*).

Based on the allegations in the Complaint the Court designates the following Claims:

> **Claim 1:** **First Amendment retaliation claim against Defendant Kulich for his verbal comments in June and December of 2025;**
>
> **Claim 2:** **Eighth Amendment conditions of confinement claim against Defendant John Doe placement officer for housing Plaintiff in two faulty cells from June 30, 2025-mid-July of 2025;**
>
> **Claim 3:** **Fourteenth Amendment due process claim against Defendant Young for refusing to issue Plaintiff additional grievance forms on July 17, 2025.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

DISCUSSION

**Claim 1**

A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the

First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). An inmate may meet the *prima facie* showing by offering direct or circumstantial evidence that the defendant's actions were motivated by retaliation. *See e.g.*, *Kidwell v. Eisenhauer*, 679 F.3d 957, 965-66 (7th Cir. 2012). "Circumstantial evidence, however, is evidence from which a trier of fact may infer that retaliation occurred. 'Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other [individuals] in the protected group.'" *Id.* To demonstrate an injury for retaliation purposes, an individual must establish "a showing of 'an objectively reasonable chilling effect' generally and that the plaintiff personally 'self-censors [his speech] as a result.'" *Henson v. Neal*, 2026 WL 92175 (7th Cir. Jan. 13, 2026).

Plaintiff alleges that he engaged in First Amendment activity by complaining in the prison property line about his lack of a fan and by filing a grievance. Plaintiff alleges that Kulich threatened him at the property line, and threatened him again in December of 2025. Plaintiff's sole piece of evidence linking the two events is his allegation that Kulich told him to stop filing grievances. Whatever merit this assertion might have in linking the June and December encounters with Kulich, Plaintiff has not suggested that anything more than the verbal harassment transpired, and he has not suggested or shown that Kulich's comments actually chilled his speech. After Kulich's comments in June, Plaintiff filed a grievance, and after the comments in December he states that he filed this lawsuit. This behavior does not suggest that Plaintiff's conduct was chilled.

Furthermore, the verbal harassment by Kulich, without more, is not enough to make out an Eighth Amendment claim. *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review); *Brand v. Oglesby*, 2021 WL 4262447 at *1 (S.D. Ill. 2021) (finding a claim insufficient where plaintiff alleged that a guard ran into his cell, verbally threatened him, and indicated he would deploy pepper spray if plaintiff moved). Here, Plaintiff does not allege any physical actions by Kulich, or any factors, that transform plain verbal threats into something more. Accordingly, Claim 1 is dismissed in full for failure to state a claim.

**Claim 2**

Plaintiff faults John Doe placement officer for putting him in two faulty cells from June 30, 2025, thru July of 2025. To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many conditions standing alone may not be sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

Plaintiff alleges that he stayed in the first cell for 11 days without access to water and that he was only provided with a single juice per day. He also claims the cell was littered with blood and feces and that the floor was often polluted with raw sewage, which gave him an infection on his bare feet. For an additional two weeks, he was placed in a cell with no electricity and no fan during July heat, suffering heat exhaustion and mild asthma problems. He alleges John Doe knowingly placed him in these conditions and could have moved him at least a week earlier but did not do so. These allegations are sufficient to proceed against John Doe "placement officer" who was responsible for Plaintiff's assigned cells in North 2 from June 30, 2025-late-July 2025.

### Claim 3

Plaintiff faults Defendant Young for refusing to give him additional grievance forms on July 17, 2025. This claim squarely fails because "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause[.]" *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Plaintiff's only allegation against Young is that she deprived him Due Process by refusing extra grievance forms, but access to grievance forms is not a protected by the Due Process clause. Plaintiff does not allege that Young took any other specific actions that harmed him. Therefore, Claim 3 is dismissed without prejudice.

### MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff's Motion for a Preliminary Injunction (Doc. 16) seeks a transfer to another prison to avoid further retaliation. Plaintiff's Motion does not describe any actions whatsoever by the individual defendants, and the retaliation claim against Kulich has

been dismissed as insufficient to state a claim.  Plaintiff vaguely alleges that he is still near the Defendants and that other inmates have experienced retaliation linked to grievances or lawsuits, but these assertions are far too generic to warrant immediate relief.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief.  *See* Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020).  An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued.  Mays, 974 F.3d at 818.  If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).  Any injunctive relief granted must also be related to claims proceeding in the underlying lawsuit, and it must generally concern parties associated with those claims.

Here, the only claim that is proceeding is a claim against John Doe placement officer concerning Plaintiff's conditions of confinement from approximately June 30, 2025, throughout July of 2025.  Plaintiff does not allege retaliation in association with this living situation, and he does not allege that he still lives in these conditions.  Therefore, injunctive relief is not warranted.

**DISPOSITION**

**IT IS HEREBY ORDERED THAT Claim 2** survives against John Doe placement officer.  By contrast, **Claim 1** is insufficient to proceed against Defendant Kulich, and

**Claim 3** is insufficient against Defendant Young.  The Clerk of Court shall **TERMINATE** Defendants Kulich and Young.

The Clerk of Court shall **ADD** the Warden of Menard in official capacity only to help identify John Doe placement officer.  **Plaintiff shall have 21 days to file a notice with descriptive information about John Doe.**  Once the notice is filed, the Warden will be directed to respond.  If Plaintiff does not file a notice, this case may be dismissed for failure to prosecute.

The Clerk of Court is **DIRECTED** to prepare for the Warden of Menard (official capacity for John Doe identification): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 15), and this Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for a Preliminary Injunction (Doc. 16) is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 10, 2026                    /s/ *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge