**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SHAQUAN CARTER, Y15666, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 26-cv-40-RJD |
| vs. | ) ) | |
| TERRI WINGERTER, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**DALY, Magistrate Judge:**

Plaintiff Shaquan Carter, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 15). On April 10, 2026, the Court designated a single claim to proceed in this case concerning conditions of confinement against Defendant Wingerter, and it initiated service of process. (Doc. 17). Plaintiff has now filed a Fifth Motion for a Preliminary Injunction (Doc. 40) seeking his transfer to another prison based on his allegation that Wingerter has again allowed his placement in a cell that is inadequate.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). An inmate must demonstrate a likelihood of success on the merits, and not merely a 'better than negligible' chance of success. *Id.* at 822. The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is

harm which cannot be repaired, retrieved, put down again, atoned for.  The injury must be of a particular nature, so that compensation in money cannot atone for it.").  The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest."  *Id.; Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor."  *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued.  *Mays*, 974 F.3d at 818.  If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).  Injunctive relief must be related to issues in the underlying lawsuit.  *See e.g., Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

In this case, the sole claim concerns the conditions of confinement Plaintiff alleges he experienced from June 30, 2025, through July of 2025 at the hands of Wingerter.  Specifically, Plaintiff alleged he spent 11 days without running water in a cell covered in blood and feces.  He further alleged two weeks in a cell in July of 2025 without electricity or a fan.  In the Fifth Motion, Plaintiff alleges that around July 11, 2026, Wingerter placed him in a cell with an inoperable toilet, where he has remained for at least five days.  (Doc. 40 at 1).  He claims there is an active work

order for the toilet, but that despite the work order Wingerter should move him to a different cell because he is the placement officer. (*Id.* at 1-2). As relief, Plaintiff seeks a prison transfer and/or designation for a single cell so that he cannot be placed with any rivals.

Unlike some of Plaintiff's earlier motions for preliminary injunctive relief alleging First Amendment retaliation by non-parties, this motion bears some substantive connection to the operative Eighth Amendment claim against Wingerter. The claim against Wingerter is premised on conditions of confinement in July of 2025, and the motion discusses new conditions as of July of 2026. As the Court has previously indicated, preliminary injunctive relief is only appropriate to the extent it is linked to an operative claim against a defendant. Here, the connection between the claim in the complaint and the new plumbing issue is still questionable. The allegations rely on the same *legal* theory involving Wingerter (the Eighth Amendment), but they are *factually* distinct. Plaintiff previously complained about a filthy cell, no running water, and no electricity or fan during extreme heat. These things are factually distinct from the lack of an operable toilet. Despite the disconnect, the broader theme that Wingerter the placement officer is leaving Plaintiff in allegedly defective cells is the same. Though the Court is not persuaded of the precise link between the original complaint and this Fifth Motion, it will continue the analysis of the request for preliminary injunctive relief.

One of the first steps when considering preliminary injunctive relief is an assessment of the plaintiff's potential success. "[A] plaintiff must demonstrate that '[his] claim has some likelihood of success on the merits'[…], not merely a 'better than negligible' chance." *Mays,* 874 F.3d at 822 (internal citations omitted).

So far, Plaintiff has alleged that Defendant Wingerter is responsible for his placement in condemned cells as the placement officer, but he has alleged very little to demonstrate that

Wingerter personally knew about the conditions of individual cells where he was placed.  He never alleges face-to-face encounters with Wingerter, and in the instance of his current placement in a cell with an inoperable toilet, he does not indicate Wingerter is personally aware of his plight.  He does not allege he has filed a grievance or attempted to contact Wingerter, and he does not explain how Wingerter might otherwise be aware of the cell condition.  Ultimately, facts like these will be important to establishing a likelihood of success on the merits.  Additionally, it is worth noting that for claims filed by inmates, the claim must be exhausted via the prison's grievance process before it can be pursued in litigation.  Given that Plaintiff has experienced the cell conditions he described as recently as last week, it is unlikely he has exhausted this issue at the prison level.

Even if the Court assumes for now that Plaintiff has demonstrated a likelihood of success on his claim against Wingerter, the Court must consider if Plaintiff has demonstrated that he will suffer irreparable harm, and it must balance the harm to plaintiff versus the harm to the defendant in providing preliminary relief.  Unlike Plaintiff's original complaint where he alleged potential dehydration, a skin rash or infection, and possible heat exhaustion from the conditions he experienced, Plaintiff identifies no discrete harm associated with his current plumbing issue.  It is not hard to imagine that a lack of a functioning toilet could be a problem, but Plaintiff does not say it is causing physical harm yet or that he is deprived of all other restroom facilities.  As such, he has done little to establish irreparable harm associated with his current placement issue.

Finally, the Court must balance the potential harm to Plaintiff against the harm of mandating the defendant to provide preliminary injunctive relief.  Plaintiff seeks single cell status or a prison transfer, both things that could pose a heavy burden on the prison.  A prison transfer is extraordinary relief that Courts are hesitant to entertain because prison administrators are much better suited to properly evaluate prison placement.  *See e.g., Girtler v. Fedie*, 835 Fed. App'x 124

(7th Cir. 2020) (prison transfers are the business of prison officials and federal courts must afford broad deference to prisons on this issue); *Mays*, 974 F.3d at 820 (courts must afford correctional administrators wide-ranging deference in maintaining institutional order, discipline, and security). The same goes for cell placement, as cell placement and cell mate pairings are undoubtably well within the expertise of prison administrators. Given that both forms of relief that Plaintiff seeks would impose a heavy burden on defendants and given that the Court finds no strong showing of irreparable harm or a likelihood of success, the Court finds it appropriate to deny the motion.

Plaintiff's Fifth Motion for a Preliminary Injunction (Doc. 40) is **DENIED**. Plaintiff's repeat filing of motions for preliminary injunctive relief is becoming burdensome. To the extent that new issues arise for Plaintiff, he must keep in mind that the Court does not serve as an emergency complaint department and that prior to seeking relief from the Court he must first attempt to use the grievance process available to him at the prison facility. Future motions tendered to the Court that appear to contain recent allegations that have not been exhausted may be summarily dismissed.

**IT IS SO ORDERED.**

Dated: July 22, 2026

**Reona J. Daly**
**United States Magistrate Judge**